IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

UNITED STATES OF AMERICA
for the use and benefit of Will and Lorna
Chandler d/b/a Chandler Construction           PLAINTIFF

VS.           Case No. 04-CV-4146

AFFOLTER CONTRACTING, LTD.
and UNITED STATES FIDELITY
& GUARANTY COMPANY           DEFENDANTS

## MEMORANDUM OPINION & ORDER

Before the Court is Defendants' Motion for Partial Summary Judgment. (Doc. 9) Plaintiff has responded. (Doc. 11) The Court finds the motion ripe for consideration.

### I. BACKGROUND

Affolter Contracting, Ltd. ("Affolter Contracting") and the United States Army Corps of Engineers ("the Corps") entered into a contract for work on the Red River Levee in Miller County, Arkansas. Affolter Contracting posted a surety bond through United States Fidelity & Guaranty Company ("USFGC"). On October 25, 2002, Plaintiffs Will and Lorna Chandler d/b/a Chandler Construction entered into a subcontract[1] with Affolter Contracting to furnish materials and perform work for the stabilization of the Red River Levee. Part of the Chandlers' responsibility under the contract was to place crushed stone as part of the levee surfacing.[2] The subcontract called for Affolter Contracting to pay for the crushed stone.[3] Article X of the subcontract also contains a clause that reads:

---

[1] Doc. 10-2, Ex. 1.

[2] Id., p. 12, (Item No. 0008).

[3] Id., p. 13.

> In addition to the foregoing provisions the parties also agree...THAT THE CONTRACTOR SHALL:
>
> (17) Be bound to the Subcontractor by all obligations that the Owner assumes to the Contractor under the Contract Documents and by all the provisions thereof affording remedied and redress to the Contractor for the Owner insofar as applicable to this Subcontract. ...[4]

On April 22, 2003, the Corps notified Affolter Contracting that there were "no additional funds available for this contract for Fiscal Year 2003."[5] The letter referred to Clause 52.232.-5001 of the contract. The applicable part of that clause states:

> (g) Any suspension, delay, or interruption of work arising from exhaustion or anticipated exhaustion of funds shall not constitute a breach of this contract and shall not entitle the contractor to any price adjustment under the "Suspension of Work" clause or in any other manner under this contract. ...[6]

The Suspension of Work Clause reads:

> (b) If the performance of all or any part of the work is, for an unreasonable period of time, suspended, delayed, or interrupted (1) by an act of the Contracting Officer in the administration of this contract, or (2) by the Contracting Officer's failure to act within the time specified in this contract (or within a reasonable time if not specified), an adjustment shall be made for any increase in the cost of performance of this contract (excluding profit) necessarily caused by the unreasonable suspension, delay, or interrupted by any other cause, including the fault or negligence of the Contractor, or for which an equitable adjustment is provided for or excluded under any other term or condition of this contract. ...[7]

On April 29, 2003, Affolter Contracting faxed Will Chandler the April 22, 2003 letter from the Corps. On the fax cover sheet, Jerry Affolter, General Partner for Affolter Contracting, wrote,

---

[4] Id., pp. 7, 9

[5] Doc. 10-3, Ex. 2, Letter from Shirley M. Wilson, Contracting Officer for the Corps' Vicksburg District, to Affolter Contracting.

[6] Doc. 10-5; Ex. 4, p. 4

[7] Id., pp. 6-7.

"We must advise the Vicksburg Office whether we will continue to work on credit or stop work until funds are available. Give me your thoughts." Affolter Contracting and the Chandlers decided to keep working on the project despite the lack of present federal funding. Affolter Contracting wrote the Corps of the decision to keep working on May 2, 2003.[8] The letter read, in part:

> The levee has been filled and shaped for approximately seven miles. Surfacing materials have been purchased and delivered to our stockpile area near the project. We must place the surfacing on the levee. At present the levee is subject to erosion and deterioration if left bare. ...
>
> Affolter intends to continue working as long as possible, to take advantage of the good weather. ...[9]

At some point during the summer of 2003, Affolter and Chandler ran out of crushed limestone. On July 1, 2003, Doyle Chandler[10] told Affolter Contracting that Will Chandler would buy the crushed stone and place it on the levee if Affolter Contracting did not want to buy the needed crushed stone.[11] On July 18, 2003, Doyle Chandler asked Affolter Contracting if it would buy the crushed stone. Affolter Contracting told Doyle Chandler it would not buy the crushed stone until the Corps started paying again and that Affolter Contracting would place the crushed stone on the levee itself.[12] In response, Doyle Chandler told Affolter Contracting, the Chandlers would pay for the crushed stone now and put it on the levee. Affolter Contracting did

---

[8] Doc. 10-6, Ex. 5, p. 1., Letter from C.W. Cooper, Affolter Contracting's Project Manager, to the Corps.

[9] Id.

[10] Doyle Chandler is not related to Will Chandler or Lorna Chandler. He was paid for the work on this project by Affolter Contracting. (Doc. 11-2, Ex. 1, p. 2. Doyle Chandler Depositon)

[11] Doc. 11-2, Ex. 1, p. 8. Doyle Chandler's handwritten notes.

[12] Id.

not respond to Doyle Chandler's suggestion.[13] On July 21, 2003, Doyle Chandler pressed Affolter Contracting for a letter stating whether Affolter would purchase the crushed stone or remove the Chandler's from the job.[14]

Again on July 29, 2003, Doyle Chandler told Affolter Contracting that the Chandler's were ready to buy the crushed stone, or have Affolter Contracting buy the crushed stone and have the Chandlers place it on the levee, or be released from the job.[15] Also on July 29, 2003, Affolter Contracting wrote the Chandlers, "Should you be willing to purchase the crushed ... stone ... as approved by the Corps ... Affolter is agreeable. The Government will pay interest on the late payments of which will be your account. The supplement to the subcontract is attached for your execution."[16] On July 31, 2003, Lorna Chandler wrote Affolter Contracting

> We do not want our job delayed and are willing to purchase the crushed stone...to complete the job in a timely manner. Our intention is to honor the contract.
>
> A copy of the supplement is attached for your approval. Please sign, date and return a copy for our files.[17]

It took the majority of the month of August 2003 for Affolter Contracting and the Chandlers to agree to the terms of the supplement to the subcontract regarding the purchase of additional crushed stone. The terms of the supplement agreed to by Affolter Contracting and the Chandlers read

---

[13] Id., p. 9.

[14] Id.

[15] Id.

[16] Doc. 10-7, p. 1.

[17] Doc. 10-9, Ex. 8, p. 1.

SUPPLEMENT TO ARTICLE I AND ATTACHMENT I (BID SCHEDULE)

Remaining portion of Item 0008[.]
Crushed Stone as amended and approved[.]
21,200 tons crushed granite (from Hatton Quarry) or an Alternative Stone and Source Pre-Approved by the Government.

Furnish and Install 21, 2000 ton at $23.00 per unit[.] $487,600.00[.][18]

Will Chandler signed the supplement on August 20, 2003, and James Affolter signed it on August 25, 2003.[19]

On October 27, 2004, the Chandlers filed this suit against Affolter Contracting and USFGC. The Chandlers allege two causes of action, payment on the bond and breach of contract. The Chandlers seek damages for money owed under the contract and costs incurred due to extra costs in performing the contract due to Affolter Contracting's actions. Affolter Contracting's motion for partial summary judgment seeks to have the Court rule that the Chandlers cannot recover "delay" damages, including office overhead and interest incurred from July 29, 2006 to October 6, 2006, the period during which the Corps had no money to fund the project. Affolter Contracting believes Clause 52.232.-5001 and the Suspension of Work Clause in the contract and Article X, ¶ 17 of the subcontract preclude such damages as a matter of law. The Chandlers respond that these damages are outside the realm of these clauses because the damages resulted from Affolter Contracting failing to purchase crushed stone, not from the depletion of federal funds for the project for the 2003 fiscal year.

---

[18] Doc. 10-12, Ex. 11, p. 2.

[19] Id.

## II. DISCUSSION

The standard of review for summary judgment is well established. The Federal Rules of Civil Procedure provide that when a party moves for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, show that there is no genuine issue as to a material fact and that the moving party is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(c); *Krenik v. County of Le Sueur*, 47 F.3d 953 (8th Cir. 1995). The Supreme Court has issued the following guidelines for trial courts to determine whether this standard has been satisfied:

> The inquiry performed is the threshold inquiry of determining whether there is a need for trial-whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). *See also Agristor Leasing v. Farrow*, 826 F.2d 372 (8th Cir. 1987); *Niagra of Wisconsin Paper Corp. v. Paper Indus. Union-Management Pension Fund*, 800 F.2d 742, 746 (8th Cir. 1986).

The Court in *Scherr Const. Co. v. Greater Huron Development Corp.*, 700 F.2d 463, 465 (8th Cir. 1983)(quoting, *Burst v. Adolph Coors Co.*, 650 F.2d 930, 932 (8th Cir.1981)(emphasis added), a case involving the entry of summary judgment, stated:

> [w]hen a motion for summary judgment is made and supported by affidavits, the party opposing the motion may not rest on the allegations in his pleadings but must resist the motion by setting forth *specific facts* that raise a genuine issue of fact for trial.

Clause 52.232.-5001(g) of the contract clearly states the delays arising from the exhaustion of federal funds does not constitute a breach of contract. The Chandlers do not argue

that the contract was breached. The Chandlers do not argue the subcontract was breached due to the exhaustion of federal funds. The Chandlers believe the subcontract was breached when Affolter Contracting did not continue to purchase crushed stone once it became apparent the crushed stone on site would be or was depleted. It appears to the Court that in late April 2003, when they were deciding whether to continue working despite the lack of federal funds, the parties did not contemplate who would purchase crushed stone later in the summer when the crushed stone supply ran short. The Chandlers were willing to do so, but wanted approval from Affolter Contracting. Affolter Contracting was not willing to purchase the crushed stoned, perhaps due to the immediate lack of federal funds, but did not communicate a course of action to the Chandlers for some time. The Chandlers argue and offer some evidence that they did merely minimal work at the job site for some 66 days, during which they incurred "delay" damages in the form of overhead, among other things. The Court finds that the clauses of the contract and subcontract cited by Affolter Contracting do not preclude the Chandlers' alleged "delay" damages.

### III. CONCLUSION

For the reasons discussed herein and above, the Court finds Defendants' Motion for Partial Summary Judgment should be and hereby is **denied.**

IT IS SO ORDERED, this 10th day of February, 2006.

                                                /s/ Harry F. Barnes
                                                Hon. Harry F. Barnes
                                                U.S. District Court